UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

ROY M. THOMPSON,

                    Petitioner,                Case No. 1:19-cv-937

v.                                   Honorable Robert J. Jonker

BRYAN MORRISON,

                    Respondent.

_____/

## REPORT AND RECOMMENDATION

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Roy M. Thompson is incarcerated with the Michigan Department of Corrections at the Lakeland Correctional Facility (LCF) in Coldwater, Branch County, Michigan. Following an eight-day jury trial in the Berrien County Circuit Court, Petitioner was convicted of second-degree murder, in violation of Mich. Comp. Laws § 750.317;[1] felon in possession of a firearm (felon-in-possession), in violation of Mich. Comp. Laws § 750.224f; carrying a concealed weapon (CCW), in violation of Mich. Comp. Laws § 750.227; and use of a firearm during commission of a felony (felony-firearm), in violation of Mich. Comp. Laws § 750.227b.[2] On August 8, 2016, the court sentenced Petitioner as a third habitual offender, Mich. Comp. Laws § 769.11, to concurrent prison terms of 4 years, 9 months to 10 years on the CCW and felon-in-possession convictions and 35 to

---

[1] Petitioner was charged with first-degree murder, but the jury found him guilty of the lesser offense of second-degree murder. (Trial Tr. VIII, ECF No. 12-12, PageID.2162.)

[2] The jury found Petitioner not guilty of two counts of assault with intent to murder relating to him firing his weapon in the direction of Stephen Krieger and Sam Shade after he had shot and killed David Krieger. (Trial Tr. VIII, ECF No. 12-12, PageID.2162.)

60 years on the second-degree murder conviction.  Petitioner was ordered to serve those sentences consecutively to a sentence of 2 years for felony-firearm.

On October 29, 2019, Petitioner timely filed his habeas corpus petition raising two grounds for relief, as follows:

I. Petitioner's constitutional right to due process of law . . . was in fact violated when the prosecution failed to exclude the sheer possibility of self-defense beyond a reasonable doubt, the state court's conclusion to the contrary, amounted to an objectively unreasonable determination, hence habeas relief is appropriate.

II. Trial counsel was constitutionally ineffective for (A) failing to admit documents, and (B) failing to object to the jury instructions.

(Pet'r's Br., ECF No. 2, PageID.22, 30.)  On August 18, 2020, Respondent filed an answer to the petition (ECF No. 11) stating that the grounds lacked merit.  Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I find that the grounds are without merit.  Accordingly, I recommend that the petition be denied.

## **Discussion**

### I. **Factual allegations**

The Michigan Court of Appeals outlined the facts underlying Petitioner's conviction, as well as the evidence introduced at his trial, as follows:

> Defendant's convictions arise out of the shooting death of David Krieger on December 11, 2015.  David and his brother, Stephen Krieger, both worked at their family's business, Michiana Supply, Inc., an industrial hose and rubber supply company located on Milton Street in Benton Harbor.  Defendant lived in a nearby residential neighborhood.  Each day, on his way to a nearby shopping plaza where he sold DVDs, defendant would walk by a house belonging to Tammicia Johnson and he would then cut across a grassy area next to Michiana's parking lot.

> At approximately 9:00 a.m. on the day in question, defendant walked his usual route.  David was outside, in Michiana's fenced-in backyard, and David yelled at defendant, ordering him to stop kicking Johnson's dog.  David then went inside Michiana and out the front door to confront defendant.  David again yelled at

2

defendant about the dog, telling defendant to stay off Michiana's property because "[w]e don't allow dog abusers on our property."  Stephen, who witnessed the confrontation, testified that David put both his hands out and said "[d]on't come on our property."  Stephen testified that after David put his hands out, defendant immediately "stepped back"; defendant then reached into his right pocket, pulled out a gun, raised it, and "fired a bullet right into [David's] chest."  Samuel Shade, a Michiana employee, and Joseph Williams, who was driving by on Milton, saw David push defendant and then saw defendant shoot David.  David died at the scene.  After defendant shot David, Stephen and defendant exchanged gunfire, but none of the shots hit anyone.  Defendant then fled the scene.

Shade called 911, and used racial slurs when reporting the incident, telling the dispatcher that a "n-----shot my friend" and that if he returned to the area, "we'll hang him up."  When paramedics and police arrived, paramedics cut off David's shirt, revealing that David, who had a concealed carry permit, had a gun under his clothing, "snug" in a hip holster.

Shortly after the shooting, police identified defendant as a suspect.  Police located defendant hiding underneath a sofa in the basement of a home.  Police later found a semi-automatic handgun in a plastic bag behind a sewer pipe in the basement.

After his arrest, defendant gave a statement to police and this recorded interview was played for the jury at trial.  In the interview, defendant stated that he kicked the dog.  Defendant indicated that there were five men at Michiana and that they yelled at him about the dog, threatening him and using racial slurs.  Defendant stated a man came and pushed him.  Defendant claimed that he then heard gunshots.  But, defendant made conflicting statements as to whether David had a gun.  Defendant stated that "the guy had a gun," then stated, "I don't know" if "he had a gun," but "somebody had a gun."  By his own admission, defendant then shot David.  Defendant proceeded to state that "he pushed me and reached" "either to swing" or to "grab something."  Defendant stated that he did not know what the man had on him to hit him with, but he stated that it "looked like he had something on him," either "a gun or a knife or something."  Defendant stated that he saw a "bulge like on the side" of the man's body.  After defendant stated that it looked like the man had a weapon, one of the detectives asked him, whether on "the first confrontation, you did not see a gun?"  Defendant responded, "no, I heard one," and he claimed that the guy's "buddy" came out with a gun "before" defendant killed David.  But, defendant then conceded that no one appeared with a gun until after he killed David.  When asked about his gun, defendant told police that he threw the gun away.

Defendant testified in his own defense at trial.  Defendant acknowledged that he encountered Johnson's dog.  According to defendant, the dog was outside of the yard, so defendant "shooed" him to get him back into his yard.  Defendant denied kicking the dog.  Defendant stated that, after he got the dog back in the yard, David started yelling at him from the fenced-in area near Michiana.  According to defendant, David stated, "[y]ou f------n-----, why did you kick that f------dog like that?"  Stephen then came outside and also yelled at defendant about the dog.  As

3

defendant continued walking, David and Shade came out the front door, and David confronted defendant using racial slurs and stating, "don't put your foot on my f------property no further or I'm gonna beat your ass."  Defendant testified that he tried to ask David, "[I]s this your property?"  David then pushed him in the chest with both hands.  Defendant testified that David's "gun was made visible to me" and that David reached "both hands" for the gun.  According to defendant, he thought that David "was gonna kill" him.  Defendant admitted that he killed David.  He testified that he shot David because he was "scared" and "in fear of [his] life."  Defendant admitted that he told police that he heard gunshots before he shot David, and he acknowledged that this was not true.  He also conceded that he lied to police when he told them that he threw his gun away.  In addition to testifying in his own defense, defendant called numerous character witnesses all of whom testified that defendant had a peaceful character.

(Mich. Ct. App. Op., ECF No. 12-14, PageID.2229-2231.)  The facts outlined by the Michigan appellate court are generally consistent with the "Relevant Facts" identified by Petitioner in his brief, although Petitioner provides significantly more detail.  (Pet'r's Br., ECF No. 2, PageID.8-18.)

Petitioner appealed his convictions and sentences.  He filed a brief with the assistance of counsel as well as a *pro per* brief.  Petitioner's first habeas issue was raised in counsel's brief.  (Pet'r's Appeal Br., ECF No. 12-14, PageID.2268.)  Petitioner raised the second habeas issue in his *pro per* brief.  (Pet'r's Pro Per Supp. Br., ECF No. 12-14, PageID.2332.)  By unpublished opinion issued March 15, 2018, the Michigan Court of Appeals denied relief on all issues and affirmed the trial court.  (Mich. Ct. App. Op., ECF No. 12-14, PageID.2229-2237.)

Petitioner filed a *pro per* application for leave to appeal in the Michigan Supreme Court raising his two habeas issues and other issues.  (Pet'r's Appl. for Leave to Appeal, ECF No. 12-15, PageID.2405-2410.)  By order entered September 12, 2018, the supreme court denied leave.  (Mich. Order, ECF No. 12-15, PageID.2402.)  On October 29, 2019, Petitioner timely filed his habeas corpus petition.

## II.    AEDPA standard

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.

L. 104-132, 110 Stat. 1214 (AEDPA).  The AEDPA "prevents federal habeas 'retrials'" and

ensures that state court convictions are given effect to the extent possible under the law.  *Bell v.*

*Cone*, 535 U.S. 685, 693-94 (2002).  An application for writ of habeas corpus on behalf of a person

who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that

was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a decision that

was contrary to, or involved an unreasonable application of, clearly established federal law as

determined by the Supreme Court of the United States; or (2) resulted in a decision that was based

upon an unreasonable determination of the facts in light of the evidence presented in the state court

proceeding."  28 U.S.C. § 2254(d).  This standard is "intentionally difficult to meet."  *Woods v.*

*Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.

28 U.S.C. § 2254(d).  This Court may consider only the holdings, and not the dicta, of the Supreme

Court.  *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th

Cir. 2001).  In determining whether federal law is clearly established, the Court may not consider

the decisions of lower federal courts.  *Lopez v. Smith*, 574 U.S. 1, 4 (2014); *Marshall v. Rodgers*,

569 U.S. 58, 64 (2013); *Parker v. Matthews*, 567 U.S. 37, 48-49 (2012); *Williams*, 529 U.S. at

381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002).  Moreover, "clearly established

Federal law" does not include decisions of the Supreme Court announced after the last adjudication

of the merits in state court.  *Greene v. Fisher*, 565 U.S. 34, 37-38 (2011).  Thus, the inquiry is

limited to an examination of the legal landscape as it would have appeared to the Michigan state

courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits.

*Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "where the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546-547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

## III. Discussion

### A.     Sufficiency of the evidence regarding self-defense

Petitioner complains that his conviction for second-degree murder is not supported by sufficient evidence because the prosecutor did not disprove beyond a reasonable doubt, that the killing was not justified by self-defense. A Section 2254 challenge to the sufficiency of the

6

evidence is governed by the standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), which is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." The *Jackson v. Virginia* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id*. Witness credibility remains the province of the jury, *see Herrera v. Collins*, 506 U.S. 390, 401-02 (1993), and an attack on witness credibility constitutes a challenge to the quality, but not the sufficiency of the government's evidence. *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002). The habeas court need only examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law. *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196-97 (6th Cir. 1988).

Moreover, because both the *Jackson* standard and AEDPA apply to Petitioner's claims, "the law commands deference at two levels in this case: First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the Michigan Court of Appeals' consideration of the trier-of-fact's verdict, as dictated by AEDPA." *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008). This standard erects "'a nearly insurmountable hurdle'" for petitioners who seek habeas relief on sufficiency-of-the-evidence grounds. *Davis*, 658 F.3d at 534 (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

The Michigan Court of Appeals resolved Petitioner's challenge to the sufficiency of the self-defense evidence by applying the following standard:

> We review de novo a challenge to the sufficiency of the evidence. *People v Lueth*, 253 Mich App 670, 680; 660 NW2d 322 (2002). "In challenges to the sufficiency

of the evidence, this Court reviews the record evidence de novo in the light most
favorable to the prosecution to determine whether a rational trier of fact could
have found that the essential elements of the crime were proved beyond a reasonable
doubt." *People v Roper*, 286 Mich App 77, 83; 777 NW2d 483 (2009). "All
conflicts in the evidence must be resolved in favor of the prosecution." *People v
Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008). "This Court will not
interfere with the trier of fact's role of determining the weight of the evidence or
the credibility of witnesses." *Id*.

(Mich. Ct. App. Op., ECF No. 12-14, PageID.2231.)  Although the state appellate court relied

upon state authorities, the standard it applied was functionally identical to the standard spelled out

in *Jackson v. Virginia*.

The state court applied the standard as *Jackson* directs.  The court considered the evidence

in a light that favored the prosecution, with reference to the state-law elements of the offense,

leaving to the jury resolution of disputed factual issues, including credibility:

In Michigan, the Legislature enacted the Self-Defense Act (SDA), MCL 780.971
*et seq.*, which "codified the circumstances in which a person may use deadly force
in self-defense or in defense of another person without having the duty to retreat."
*People v Guajardo*, 300 Mich App 26, 35-36; 832 NW2d 409 (2013) (quotation
marks and citation omitted).  Like the common law, the SDA requires that a person
have an honest and reasonable belief that there is an imminent "danger of death,
great bodily harm, or a sexual assault in order to justify the use of deadly force."
*Id*. See also MCL 780.972.  "In general, a defendant does not act in justifiable self-
defense when he or she uses excessive force[.]"  *Guajardo*, 300 Mich App at 35.

[O]nce the defendant injects the issue of self-defense and satisfies the
initial burden of producing some evidence from which a jury could
conclude that the elements necessary to establish a prima facie defense of
self-defense exist, the prosecution bears the burden of proof to exclude the
possibility that the killing was done in self-defense . . . beyond a
reasonable doubt. [*People v Dupree*, 486 Mich 693, 709-710; 788 NW2d
399 (2010)(quotation marks and footnotes omitted).]

In this case, defendant introduced "some evidence from which a jury could
conclude that the elements necessary to establish a prima facie defense of self-
defense exist[ed]." *Id*. Defendant testified that David and other individuals at
Michiana confronted him and directed racial insults and threats at him.  Defendant
testified that David then physically pushed him. According to defendant, he saw
that David had a gun and he saw David reaching both hands for a gun. Defendant
testified that he shot David because he thought David was going to kill him,
explaining, "I was gonna die.  If I don't shoot, I was gonna die."

8

However, the prosecution introduced evidence that would allow a rational jury to exclude the possibility of self-defense beyond a reasonable doubt. *Id*. At trial, three eyewitnesses testified that they witnessed the shooting. None of the witnesses saw David possess a gun or reach for his gun. To the contrary, their testimony indicates that David did nothing more than put his hands out or, at most, push defendant. For instance, Stephen testified that David put his hands out to prevent defendant from entering the property. According to Stephen, David put his hands to his sides when defendant pulled a gun. Shade and Williams testified that David pushed defendant. However, Shade did not see David reach for a gun. Rather, Shade stated that, after David pushed defendant, defendant immediately pulled a gun and shot David. Likewise, Williams testified that David shoved defendant, took a step backward, and then put his hands to his sides. Defendant then shot David. Further, while David did have a gun on his person, it was found "snug" in its holster underneath his clothing and a police officer testified that the gun was not visible until David's shirt was cut away.  Although defendant testified that he saw David's gun and saw David reach for his gun, the credibility of the witnesses was for the jury. *Kanaan*, 278 Mich App 594, 619. The jury could have found Stephen's, Shade's, and Williams's testimonies more credible and found that David did not reach to retrieve a deadly weapon.[1] In these circumstances, a rationale [sic] jury could have concluded beyond a reasonable doubt that defendant did not have an honest and reasonable belief that shooting David in the chest was necessary to prevent imminent death or great bodily harm. Thus, the prosecution introduced sufficient evidence to allow a rational jury to conclude beyond a reasonable doubt that defendant did not act in self-defense.

[1] Indeed, the jury had sound reasons to disbelieve defendant's version of events given the inconsistencies in defendant's statements. For example, at trial, defendant testified that David's shirt came up and he saw David's gun. However, during the police interrogation, defendant equivocated on whether David had a gun. In his interview, he also stated that David's "buddy" had a gun and that he heard shots before he killed David; but he later conceded that no one fired before he killed David. In addition, during the police interrogation, defendant admitted that he kicked the dog; but, at trial, he denied doing so. On this record, a rational jury could have concluded that defendant was not credible. See *Kanaan*, 278 Mich App at 618. Further, the jury could have concluded that defendant evinced a consciousness of guilt when he fled the scene, hid inside a basement under a couch, hid the gun that he used, and lied to police about what he did with the gun.  See *People v Coleman*, 210 Mich App 1, 4; 532 NW2d 885 (1995).

(*Id*., PageID.2231-2232).

Petitioner has failed to show that the state court's determination that the prosecutor met his burden with sufficient evidence is contrary to, or an unreasonable application of, the clearly established federal law of *Jackson*.  Unquestionably, if one credits Petitioner's trial testimony that

he saw the victim's gun and saw the victim reach for it before Petitioner fired first, and if one views the evidence in a light that favors Petitioner, there was sufficient evidence for the jury to find that the prosecutor had failed to disprove beyond a reasonable doubt that Petitioner acted in self-defense. Petitioner invites the Court to do just that—to find him credible and view the evidence in a light that favors him. (Pet'r's Br., ECF No. 2, PageID.24-29; Pet'r's Response Br., ECF No. 17, PageID.2481-2482.) Petitioner's invitation ignores the *Jackson* standard. Indeed, Petitioner turns the *Jackson* standard on its head. Under *Jackson*, the Court must view the evidence in a light that favors the prosecution and leave issues of credibility to the jury.

Although Petitioner attempts to explain away the evidence relied upon by the state court of appeals in its sufficiency analysis, he does not argue that the court's statement of that evidence is unreasonable or that it is not supported by the record. The evidence identified by the state court called into question Petitioner's credibility regarding his belief that the victim had a gun and was reaching for it. So long as there is evidence calling into question Petitioner's version of the events, under the *Jackson* standard, there is sufficient evidence to find that Petitioner did not act in self-defense. Accordingly, if the prosecutor were constitutionally required to present sufficient evidence to disprove Petitioner's claim of self-defense, Petitioner has failed to show that the Michigan Court of Appeals' determination—that the evidence was sufficient to disprove self-defense—is contrary to, or an unreasonable application of, *Jackson*. Accordingly, Petitioner is not entitled to habeas relief on this claim.

Moreover, the requirement that the prosecutor disprove the affirmative defense is not a constitutional requirement of sufficient evidence. Therefore, it is not cognizable on federal habeas review. Section 750.316 of the Michigan Compiled Laws states that three types of conduct constitute first-degree murder:

(a) Murder perpetrated by means of poison, lying in wait, or any other willful, deliberate, and premeditated killing.

(b) Murder committed in the perpetration of, or attempt to perpetrate [certain listed felonies].

(c) A murder of a peace officer or a corrections officer committed while the peace officer or corrections officer is lawfully engaged in the performance of any of his or her duties as a peace officer or corrections officer, knowing that the peace officer or corrections officer is a peace officer or corrections officer engaged in the performance of his or her duty as a peace officer or corrections officer.

Mich. Comp. Laws § 750.316.  All other kinds of murder are second-degree murder.  Mich. Comp.

Laws § 750.317.

"Murder," however, is not defined in the Michigan statutes.  The Michigan Supreme Court

has explained that "murder," as used in the statute, is defined by the common law at the time of

codification.  *People v. Riddle*, 649 N.W.2d 30, 37-38 (Mich. 2002).  In *People v. Oros*, 917

N.W.2d 559 (Mich. 2018), the Michigan Supreme Court described the elements of first-degree

murder as "(1) the intentional killing of a human (2) with premeditation and deliberation."  *Oros*,

917 N.W.2d at 565.  "'[S]econd degree murder is first-degree murder minus premeditation' [or the

enumerated predicate felony]."  *Id*. at 565 n.4 (quoting *People v. Blevins*, 886 N.W.2d 456, 466

(Mich. App. 2016) (quoting *People v. Carter*, 236 N.W.2d 500, 502 (Mich. 1975))).

Under Michigan law, self-defense is an affirmative defense.  *See People v. Dupree*, 788

N.W.2d 399, 405 (Mich. 2010).[3]  "An affirmative defense, like self-defense, 'admits the crime but

---

[3]  In *Berrier v. Egeler*, 583 F.2d 515 (6th Cir. 1978), the Sixth Circuit stated that the absence of self-defense was an element of murder. *Id.* at 521. However, the primary precedent *Berrier* cites is from 1887 and arose in a manslaughter case, *People v. Coughlin*, 32 N.W. 905 (Mich. 1887). Only two cases *Berrier* cites relate to murder (rather than manslaughter), and one held that under Michigan state law, "once the issue of self-defense is injected and evidentially supported," the burden of proving that the defendant did not act in self-defense is on the prosecution. *See People v. Jackson*, 212 N.W.2d 918, 920 (1973); *see also People v. Asbury*, 241 N.W. 144 (1932). In *Paprocki v. Foltz*, 869 F.2d 281 (6th Cir. 1989), the Sixth Circuit cited *Berrier* in support of the proposition that self-defense is not an affirmative defense to murder in Michigan. *Id*. at 282.

seeks to excuse or justify its commission. It does not negate specific elements of the crime.'"
*People v. Reese*, 815 N.W.2d 85,101 n.76 (Mich. 2012) (quoting *Dupree*, 788 N.W.2d at 405 n.11).

Although a prosecutor is required to disprove a claim of self-defense under state law,
*People v. Watts*, 232 N.W.2d 396, 398 (Mich. Ct. App. 1975), "'[p]roof of the nonexistence
of . . . affirmative defenses has never been constitutionally required,'" *Smith v. United States*, 568
U.S. 106, 110 (2013) (quoting *Patterson v. New York*, 432 U.S. 197, 210 (1977)). Thus, the
Constitution did not require the prosecution in Petitioner's case to disprove self-defense beyond a
reasonable doubt. *See Gilmore v. Taylor*, 508 U.S. 333, 359 (1993) (Blackmun, J., dissenting)
("In those States in which self-defense is an affirmative defense to murder, the Constitution does
not require that the prosecution disprove self-defense beyond a reasonable doubt."); *Martin v.
Ohio*, 480 U.S. 228, 233-36 (1987) (rejecting claim that putting burden on defendant to prove self-
defense is unconstitutional); *see also Allen*, 858 F.2d at 1197 (explaining that habeas review of

---

Further muddying the waters is a dissent in *People v. Dykhouse*, 345 N.W.2d 150, 158 (Mich.
1984), that included the absence of justification or excuse in the list of elements of murder.

However, it is not possible to square the proposition that the absence of self-defense is an element
with the subsequent statements in *Dupree*, and *People v. Rajput*, 949 N.W.2d 32, 34 (Mich. 2020),
as well as *Jackson*, 212 N.W.2d at 920, that self-defense is an affirmative defense. *Cf. People v.
Reese,* 815 N.W.2d 85, 93 n.27 (Mich. 2012); *People v. Denson*, 902 N.W.2d 306, 399 (Mich.
2017). Moreover, the Michigan Supreme Court's recent statements of the elements of murder do
not include the absence of excuse or justification: the "elements of first-degree murder are (1) the
intentional killing of a human (2) with premeditation and deliberation." *People v. Oros*, 917
N.W.2d 559, 565 (Mich. 2018). "[S]econd degree murder is first-degree murder minus
premeditation or the enumerated [predicate] felony." *Id.* at 565 n.4 (quoting *People v. Blevins*,
886 N.W.2d 456, 466 (Mich. App. 2016), and *People v. Carter*, 236 N.W.2d 500, 502 (Mich.
1975)).

*Mullaney v. Wilbur*, 421 U.S. 684 (1975), holds that the federal courts are bound by the state
court's statement of its own law. *Id.* at 691. If there were any uncertainty about how Michigan
viewed self-defense in the context of a murder charge—uncertainty that allowed the *Berrier* court
to conclude that the absence of self-defense is an element of murder rather than an affirmative
defense—that uncertainty appears to have been resolved. Regardless, the state court properly
determined that there was sufficient evidence to support the conviction.

sufficiency-of-the-evidence claims is limited to elements of the crimes as defined by state law and distinguished from affirmative defenses, citing *Engle v. Isaac*, 456 U.S. 107 (1982), and *Duffy v. Foltz*, 804 F.2d 50 (6th Cir. 1986)).

Put another way, "the due process 'sufficient evidence' guarantee does not implicate affirmative defenses, because proof supportive of an affirmative defense cannot detract from proof beyond a reasonable doubt that the accused had committed the requisite elements of the crime." *Caldwell v. Russell*, 181 F.3d 731, 740 (6th Cir. 1999) (abrogated on other grounds by *Mackey v. Dutton*, 217 F.3d 399, 406 (6th Cir. 2000)).  In raising this challenge, Petitioner "has only faulted the jury's refusal to credit his proffered affirmative excuse or justification for that purposeful killing."  *Id.*  Thus, any claim that the prosecutor failed to disprove his affirmative defense is merely a state-law claim that is not cognizable on habeas review.  *Id.*; *Allen*, 858 F.2d at 1200.  Petitioner's sufficiency claim, therefore, does not warrant habeas relief.

### B.     Ineffective assistance of counsel

Petitioner claims his trial counsel rendered ineffective assistance in three respects:  (1) counsel failed to get a warranty deed admitted into evidence that would have established the property line and shown that the victim traveled outside the victim's property to assault Petitioner; (2) counsel failed to object to the second-degree murder instruction that left off the element of "without justification or excuse;" and (3) counsel failed to request an instruction on voluntary manslaughter.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel.  To establish a claim of ineffective assistance of counsel, the petitioner must prove:  (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome.  *Id.* at 687.

13

A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under Section 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 15 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011). In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at 102).

### 1.    The warranty deed

Petitioner's counsel "asked numerous questions of multiple witnesses about the boundary line of [the victim's business] property in an attempt to show that, at the time of the confrontation, [the victim] crossed over [his business] property line and crossed onto the neighboring property. .

. .” (Mich. Ct. App. Op., ECF No. 12-14, PageID.2234.)  Counsel argued that the victim's presence

on the neighboring property would be relevant to assessing his level of aggressiveness.  (*Id.*)  The

trial court would not permit counsel to introduce the deed into evidence—not because it was

irrelevant, but because counsel had failed to timely provide the document to the prosecutor.

      The court of appeals relied on state authority but considered whether Petitioner had shown

"(1) counsel rendered assistance that 'fell below the objective standard of reasonableness,' and (2)

'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different.'"  (*Id.*, PageID.2233.)  Thus, the court of appeals applied the functional

equivalent of the *Strickland* standard.

      The appellate court did not even discuss the reasonableness of counsel's conduct, choosing

instead to assess whether that conduct had prejudiced Petitioner.  The court concluded Petitioner

had suffered no prejudice:

> First of all, defense counsel was able to present his theory about the property line
> even without the warranty deed. That is, defense counsel asked numerous questions
> about the property line and David's location.  Additionally, according to the trial
> court, without a survey, the legal description contained in the document could not
> be easily converted to an understanding of the property lines; thus, the document
> did not appear to have a high probative value.  Moreover, even if defense counsel
> introduced the document, and assuming the jury could decipher the easement and
> property lines, this would not have shown that David knew that he crossed over the
> property line at the time he confronted defendant.  Absent evidence that David
> knew the property boundaries, there is no factual basis for defendant's contention
> that a higher level of aggressiveness should be attributed to David because he
> crossed a property line.  Finally, we are not persuaded by defendant's argument that
> the property line was highly relevant. It was uncontested at trial that David
> approached defendant and berated him about his treatment of Johnson's dog.
> Irrespective of whether David crossed over the property line, the central issue in
> this case was whether defendant had a reasonable fear of imminent death or great
> bodily harm when he shot David. MCL 780.972(1)(a). Defendant has failed to show
> that he was denied the effective assistance of counsel based on counsel's failure to
> introduce the warranty deed.

(*Id.*, PageID.2235.)

Petitioner contends the Michigan Court of Appeals' prejudice analysis is contrary to *Strickland*.  Petitioner insists that whether or not the victim crossed the property line was significant to determining whether the victim was the aggressor.  But Petitioner does not attack the court of appeals' determination that the deed itself was not particularly helpful in definitively fixing the location of the property line for the jurors.

Counsel was permitted to explore with the witnesses where the confrontation occurred in relation to their estimation of the property line.  The trial court determined that without a survey to convert the metes and bounds property description to a visual reference, the deed added little, if anything, to an understanding of the property lines.  That determination of fact is presumed correct, and Petitioner offers no evidence, much less clear and convincing evidence, to overcome that presumption.  Accordingly, Petitioner has not shown that the appellate court's conclusion that he suffered no prejudice from the exclusion of the warranty deed is contrary to, or an unreasonable application of, *Strickland*.  Thus, he is not entitled to habeas relief on that claim.

### 2.    Failure to object to jury instructions

Michigan Model Criminal Instruction 16.5 regarding second-degree murder provides:

(1) [The defendant is charged with the crime of / You may also consider the lesser charge of] second-degree murder.  To prove this charge, the prosecutor must prove each of the following elements beyond a reasonable doubt:

(2) First, that the defendant caused the death of [name deceased], that is, that [name deceased] died as a result of [state alleged act causing death].

(3) Second, that the defendant had one of these three states of mind: [he / she] intended to kill, or [he / she] intended to do great bodily harm to [name deceased], or [he / she] knowingly created a very high risk of death or great bodily harm knowing that death or such harm would be the likely result of [his / her] actions.

[(4) Third, that the killing was not justified, excused, or done under circumstances that reduce it to a lesser crime.]

Mich. Model Crim. J. Instr. 16.5 (footnotes omitted).  The "Use Note" for the instruction provides that paragraph 4 may be omitted if there is no evidence of justification or excuse, and the jury is not being instructed on manslaughter or any offense less than manslaughter.  *Id*.  The "Use Note" also indicates that the court may insert the relevant justification or excuse instructions immediately after paragraph 4 or the court may give them at a later time.  *Id*.

Petitioner contends that the court erred because it did not read paragraph 4 even though there was evidence that the killing was justified by self-defense.  Petitioner contends further that his counsel rendered ineffective assistance because he failed to object to the omission of paragraph 4.  Although Petitioner does not mention it, there are paragraphs just like paragraph 4 in the instruction regarding first-degree murder—paragraph 6 of Michigan Model Criminal Jury Instruction 16.1—and assault with intent to murder—paragraph 4 of Michigan Model Criminal Jury Instruction 17.3.  The court did not read those paragraphs either.  Instead, the court read the instructions regarding all three of those crimes and then introduced the concept of self-defense with the following:

> The defendant claims that he acted in lawful self-defense.  A person has the right to use force or even take a life to defend himself in certain circumstances.  If a person acts in lawful self-defense, that person's actions are justified and he is not guilty of murder or assault with intent to murder.

(Trial Tr. VIII, ECF No. 12-12, PageID.2124.)  The court then read the instructions regarding self-defense.  Thus, instead of referring generically to justification or excuse in each instruction and then delving into the specific instructions regarding the justification claimed by Petitioner, the court dealt only with the specific justification and then made clear to the jurors that the claimed justification would apply to first-degree murder, second-degree murder, and assault with intent to murder.

The court of appeals did not directly address whether it was professionally unreasonable for counsel to not object to the instructions as given.  The court acknowledged that counsel could have succeeded in such an objection because, as set forth in the use note, there was evidence to support the self-defense justification admitted at trial.  Then the court jumped ahead to the prejudice analysis:

> [E]ven assuming counsel performed unreasonably by failing to object to the omission of this portion of the second-degree murder instruction, defendant is not entitled to relief because defendant cannot show that, but for counsel's deficient performance, the result of the proceeding would have been different.  *Toma*, 462 Mich at 302-303.  The trial court provided a thorough instruction on self-defense, which was the only justification for the shooting that defendant advanced at trial.  Specifically, the trial court instructed the jury that "[i]f a person acts in lawful self-defense, that person's actions are justified and he is not guilty of murder . . . ."  The trial court also instructed the jury that "[t]he defendant does not have to prove that he acted in self-defense.  Instead, the prosecutor must prove beyond a reasonable doubt . . . that the defendant did not act in self-defense."  These instructions made plain that defendant was not guilty of murder if he acted in self-defense and that the prosecutor bore the burden of proving that defendant did not act in self-defense.  Even if the instructions on second-degree murder were somewhat imperfect, the instructions, when considered as a whole, fairly presented the issues to be tried and these instructions were sufficient to protect defendant's rights.  See *People v Fennell*, 260 Mich App 261, 265; 677 NW2d 66 (2004).  In these circumstances, defendant has not shown that counsel's failure to object to the omission of the "without justification or excuse" language affected the outcome of the proceedings.  *Toma*, 462 Mich at 302-303.

(Mich. Ct. App. Op., ECF No. 12-14, PageID.2235-2236.)  Petitioner does not address the appellate court's determination that the self-defense instructions communicated the substance of the "without justification or excuse" element of second-degree murder even if the trial court did not include the specific language set forth in the Michigan Model Criminal Jury Instructions.

The Sixth Circuit has held that a "challenged instruction is not to be judged in isolation; it must be considered in the context of the entire jury charge."  *Hardaway v. Withrow*, 305 F.3d 558, 565 (6th Cir. 2002).  In *Hardaway*, the petitioner raised the same type of challenge Petitioner raises.  The court rejected the claim, concluding that failure to include the "without justification or

18

excuse" element does not warrant habeas relief where "the state trial court instructed the jury on self defense and made it clear that it was not up to [the defendant] to prove that he had acted in self defense; it was up to the prosecution, rather, to prove beyond a reasonable doubt that [the defendant] did not act in self defense." *Id*.

Although Petitioner challenges counsel's failure to object to the instruction, rather than the instruction itself, the reasoning of *Hardaway* compels the conclusion that counsel's "error" did not prejudice Petitioner in any way. Accordingly, Petitioner has failed to show that the court of appeals' determination that he suffered no prejudice from counsel's failure to object is contrary to, or an unreasonable application of, *Strickland* and Petitioner is not entitled to habeas relief.

### 3.    Failure to request a manslaughter instruction

Finally, Petitioner contends his counsel rendered ineffective assistance because counsel did not seek an instruction on voluntary manslaughter. "Manslaughter is murder without malice." *People v. Mendoza*, 664 N.W.2d 685, 689 (Mich. 2003). There are two types of manslaughter, voluntary and involuntary. "Voluntary" manslaughter is "[t]he act of killing, though intentional, . . . committed under the influence of passion or in heat of blood, produced by an adequate or reasonable provocation, and before a reasonable time has elapsed for the blood to cool and reason to resume its habitual control . . . ." *Id*. at 690 (quoting *Maher v. People*, 10 Mich. 212, 1862 WL 1095 (Mich. May 21, 1862)).[4] Petitioner argues now that he acted in the heat of passion after adequate provocation.

---

[4] Involuntary manslaughter is "the killing of another without malice and unintentionally, but in doing some unlawful act not amounting to a felony nor naturally tending to cause death or great bodily harm, or in negligently doing some act lawful in itself, or by the negligent omission to perform a legal duty." *People v. Townes*, 218 N.W.2d 136, 141 (Mich. 1974). There is no suggestion that Petitioner's killing of the victim was involuntary manslaughter. The court of appeals concluded that involuntary manslaughter was inconsistent with Petitioner's theory of the case. (Mich. Ct. App. Op., ECF No. 12-14, PageID.2236) ("In this case, the evidence showed that defendant intentionally shot David in the chest. There was no evidence that the death was

Provocation "is not an element of voluntary manslaughter . . . [; r]ather, provocation is the circumstance that negates the presence of malice." *Mendoza*, 664 N.W.2d at 690. To properly negate the presence of malice that might make a killing murder, it must be shown that the killing occurred "in the heat of passion, the passion was caused by adequate provocation, and there was not a lapse of time during which a reasonable person could control his passions." *Id*. "[W]hat constitutes such provocation is necessarily and obviously a question of fact." *People v. Holmes*, 69 N.W. 501, 503 (Mich. 1896).

The court of appeals implicitly acknowledged that the facts might have supported a provocation/heat of passion claim. But the court also concluded that counsel's decision to forego such a claim was professionally reasonable:

> In this case, defense counsel could have made a reasonable strategic decision to pursue an "all or nothing" strategy. See *Nickson*, 120 Mich App at 687. In other words, counsel may have reasonably decided to forgo requesting a manslaughter instruction with the hopes of obtaining an outright acquittal based on a self-defense theory. The fact that this strategy was not entirely successful does not establish that defense counsel provided ineffective assistance. See *People v Kevorkian*, 248 Mich App 373, 414-415; 639 NW2d 291 (2001).

(Mich. Ct. App. Op., ECF No. 12-14, PageID.2236.)

If the appellate court's position constitutes a reasonable argument that counsel satisfied *Strickland*'s deferential standard, that ends the analysis. The "any reasonable argument" language from *Harrington* reflects the double deference owed. *Harrington*, 562 U.S. at 105 ("When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."). In *Harrington*, the issue was whether counsel could have reasonably decided ***not*** to

---

caused by an act of gross negligence or intent to injure. Instead, defendant admitted intentionally killing David but claimed that the killing was justified—i.e., that it was done in self-defense. Therefore, an involuntary manslaughter instruction was not warranted.").

consult a blood expert.  The *Harrington* court did not evaluate counsel's decision based on the reasons offered by counsel.  Indeed, it does not appear that there was ever a hearing that disclosed counsel's motivation for his decision.  Instead, the *Harrington* court considered the reasonableness of the decision in the abstract.  That approach necessarily follows from *Strickland*'s requirement that, to overcome the presumption of regularity, the defendant must show that the challenged action ***cannot*** be considered sound trial strategy.  If the reviewing court can conceive of a sound strategy that includes the challenged action, the matter is resolved.

*Harrington* reversed a Ninth Circuit *en banc* decision.  The *Harrington* court criticized the Ninth Circuit for limiting its inquiry to counsel's actual thinking:

> The Court of Appeals erred in dismissing strategic considerations like these as an inaccurate account of counsel's actual thinking.  Although courts may not indulge "post hoc rationalization" for counsel's decisionmaking that contradicts the available evidence of counsel's actions, *Wiggins, supra*, at 526–527, neither may they insist counsel confirm every aspect of the strategic basis for his or her actions.  There is a "strong presumption" that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than "sheer neglect."  *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003) (per curiam).  After an adverse verdict at trial even the most experienced counsel may find it difficult to resist asking whether a different strategy might have been better, and, in the course of that reflection, to magnify their own responsibility for an unfavorable outcome.  *Strickland*, however, calls for an inquiry into the objective reasonableness of counsel's performance, not counsel's subjective state of mind.  466 U.S., at 688.

*Harrington*, 562 U.S. at 109-10.  Under that reasoning, unless Petitioner shows the Michigan Court of Appeals that its proposed strategic reason for the challenged action was, in fact, not the reason for counsel's action, the habeas court does not need to inquire any further into counsel's actual reason for his or her action (or inaction).  Therefore, in Petitioner's case, this Court need not determine counsel's actual reason for foregoing a manslaughter instruction to resolve the ineffective assistance claim.  That motivation, unless expressed in the record, is immaterial.  The only question is the reasonableness of the court of appeals' determination that an "all or nothing" approach was reasonable.

In *Kelly v. Lazaroff*, 846 F.3d 819 (6th Cir. 2017), the Sixth Circuit considered whether an "all or nothing" strategy, where defense counsel in a murder case foregoes pursuing mitigation in favor of a chance at acquittal, might be reasonable.  The *Kelly* court concluded that such a "high risk, high reward" strategy is reasonable where there is sufficient evidence in the record to support the chance of acquittal.  *Id*., at 830; *see also Tinsley v. Million*, 399 F.3d 796, 808 (6th Cir. 2005) (counsel's failure to request instruction for lesser included offense of manslaughter was a permissible exercise of trial strategy during defendant's murder trial, where defendant's primary line of defense was that he did not shoot the victim); *Scott v. Elo*, 302 F.3d 598 (6th Cir. 2002) (counsel's failure to request an involuntary manslaughter instruction was held to not be deficient performance where the evidence did not support a finding of involuntary manslaughter, and counsel had made a strategic decision to advance to other defense theories); *Lewis v. Russell*, 42 F. App'x 809, 810-11 (6th Cir. 2002) (trial counsel's failure to request a jury instruction on lesser-included voluntary manslaughter in a murder trial constituted a reasonable strategic decision consistent with the defendant's effort to seek full acquittal on the basis of self-defense); *Edwards v. Mack*, 4 F. App'x 215, 217-18 (6th Cir. 2001) (finding counsel's waiver of jury instructions on lesser-included offenses was not ineffective assistance, where defendant did not want jury instructed on lesser included offenses, but instead hoped to obtain an acquittal by having jury instructed on the murder charge only; moreover, even if counsel pursued strategy without the defendant's permission, it constituted a proper exercise of counsel's judgment to waive lesser included offense instructions).

In Petitioner's case, there was sufficient evidence in the record to support a determination that he acted in self-defense.  The victim aggressively approached Petitioner and physically assaulted him.  It appears that the assault was accompanied by racial slurs.  At a minimum, the

witnesses—co-workers of the victim—used racial slurs in describing the circumstances surrounding the incident.  One such witness suggested to the 911 operator that he intended to lynch Petitioner if the witness got to him first.  Moreover, the victim was carrying a concealed weapon. Petitioner testified that the victim made his gun visible to Petitioner and then reached for the gun.

If the jurors had believed it, Petitioner's testimony would have provided a strong foundation for a self-defense claim.  But Petitioner's testimony at trial was not consistent with his statements during recorded interviews with police, nor was it consistent with the testimony of other eyewitnesses.  Apparently, that was enough for the jurors to reject Petitioner's testimony regarding the victim's reach for his weapon.

Voluntary manslaughter, on the other hand, required Petitioner to show that he killed in the heat of passion caused by adequate provocation.  That is decidedly different than Petitioner's self-defense claim, a claim that was based on the rational decision to shoot because Petitioner was afraid for his life.  Presenting those claims together, though legally permissible, invited the jury to reject at least one and possibly both claims. Petitioner cast the die for his trial strategy when he initially spoke with police following the shooting.  His responses indicated that he shot in self-defense.  Even though his pretrial interviews were too inconsistent with his trial testimony to win over the jurors regarding self-defense, his pretrial interviews would have been even more inconsistent with a claim that he acted in the heat of passion following adequate provocation. Therefore, counsel's strategy in foregoing pursuit of a provocation/heat of passion claim was reasonable and the appellate court's conclusion to that effect is neither contrary to, nor an unreasonable application of, clearly established federal law.  Petitioner is not entitled to habeas relief on this claim.

## IV.    Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted.  A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability.  *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted.  *Id.*  Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  *Murphy*, 263 F.3d at 467.  Consequently, I have examined each of Petitioner's claims under the *Slack* standard.  Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id.*  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims.  *Id.*

I find that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims would be debatable or wrong.  Therefore, I recommend that the Court deny Petitioner a certificate of appealability.

Moreover, although I conclude that Petitioner has failed to demonstrate that he is in custody in violation of the constitution and has failed to make a substantial showing of a denial of a constitutional right, I would not conclude that any issue Petitioner might raise on appeal would be frivolous.  *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

### Recommended Disposition

For the foregoing reasons, I recommend that the habeas corpus petition be denied.  I further recommend that a certificate of appealability be denied.  Finally, I recommend that the Court not certify that an appeal would not be taken in good faith.

Dated: February 17, 2021                              /s/ Sally J. Berens
                                                        SALLY J. BERENS
                                                        U.S. Magistrate Judge

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).